THYELE M. LAMB, Respondent, *v.* FRANCIS D. CARLEY, Appellant.

*Proposal to guarantee against loss in consideration of money being confided to the guarantor to speculate with — when not enforcible.*

In an action brought to enforce an alleged agreement to guarantee the plaintiff against loss upon certain stock speculations, it appeared that the defendant, who was the president of a corporation called the Monetary Trust, solicited the plaintiff to remit certain moneys to the corporation for investment; and that the plaintiff wrote a letter to the defendant, saying: I "may decide to invest from three to five thousand dollars more under your advice, but may not be in a position to do so for a month yet." In answer to this the defendant wrote to the plaintiff, "If you will, as soon as possible, make a remittance, such as you intimate, I will guarantee you against loss on that account for a given period until we have made up a good sum in your favor. I will go into details more definitely when you send the money."

The plaintiff subsequently made remittances to the defendant aggregating about $3,000, the last remittance being inclosed in a letter, which contained the following statement: "After losses I sustained in the recent slump, I should be very timid of investing further in the street, but am resting easy under your skillful management and kind offer of indemnity against loss." There was no further agreement as to the terms of the guaranty, the period for which it was to continue, or any of the details which the defendant stated he would definitely fix on the remittance of the money.

*Held,* that the defendant's letter did not constitute a definite agreement, but a proposal for a subsequent agreement to be made between the parties, and could not be enforced.

*Semble,* that, assuming that the agreement could be enforced, the defendant's liability was contingent upon the plaintiff's permitting the amount of the remittance to remain under the control of the defendant until the speculation in which it was embarked had been terminated, and that as he had withdrawn a considerable portion of such remittance upon the understanding that he was to return it within a short time, which he had failed to do, he was not entitled to hold the defendant upon the guaranty, in the absence of any evidence to shew that, at the time he withdrew the portion of the remittance in question, any loss had been sustained.

Per VAN BRUNT, P. J., INGRAHAM and McLAUGHLIN, JJ.

APPEAL by the defendant, Francis D. Carley, from a judgment of the Supreme Court in favor of the plaintiff, bearing date the 24th day of June, 1898, and entered in the office of the clerk of the county of New York upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 14th day of July, 1898, denying the defendant's motion to set aside the direction of the court pursuant to which the verdict was rendered.

*James M. Hunt,* for the appellant.

*A. Leo Everett,* for the respondent.

INGRAHAM, J. :

The action was brought to enforce an agreement to guarantee the plaintiff against loss upon certain stock speculations. The complaint alleged that the plaintiff was solicited by the defendant to remit money to the Monetary Trust, a corporation of which the defendant was the president, for investment, and the defendant undertook that if the plaintiff would do so, he would guarantee him against loss on the account until the Monetary Trust had made up

a good sum in his (the plaintiff's) favor. The agreement to guarantee was sought to be proved by correspondence. The first letter was written by the plaintiff to the defendant, dated January 6, 1896, in which the plaintiff states: I "may decide to invest from three to five thousand dollars more under your advice, but may not be in a position to do so for a month yet." In answer to this letter, on the eighth of January, the defendant writes to the plaintiff, and after regretting certain unfortunate speculations of the plaintiff, says: "As a rule, those customers who have lost have shown good spirit, but no one probably equal to yours. I intend to make this a personal matter between you and myself, my dear Mr. Lamb, and if you will as soon as possible make a remittance, such as you intimate, I will guarantee you against loss on that account for a given period until we have made up a good sum in your favor. I will go into details more definitely when you send the money." Subsequently the plaintiff made remittances to the defendant aggregating about $3,000. The last remittance was inclosed in a letter which contained the following statements: "After losses I sustained in the recent slump, I should be very timid of investing further in the 'street,' but am resting easy under your skillful management and kind offer of indemnity against loss." There was no further agreement as to the terms of the guaranty, the period for which it was to continue, or any of the details which the defendant stated he would definitely fix on the remittance of the money.

We do not think that there was here such a definite agreement as could be enforced. The plaintiff had stated to the defendant that he intended to make a remittance for the purpose of further speculation some time in the future, and in answer to that the defendant had stated that if he made such remittance the defendant would guarantee the plaintiff against loss. The details of the guaranty, including the period for which it should continue, and the speculation to be conducted, were to be definitely settled when the money was sent. Here was a clear intimation that the proposal was to be subject to subsequent arrangements as to the details of the agreement. What was proposed was not at the time a definite agreement, but a proposal for a subsequent agreement to be made between the parties.

Assuming, however, that there was such an agreement as could be enforced, we think that the plaintiff failed to keep his part of the contract, thereby relieving the defendant from any obligation to pay the plaintiff the loss sustained. The plaintiff had proposed to remit from $3,000 to $5,000 to be invested under the defendant's advice. The defendant replied that if the plaintiff would make as soon as possible such remittance he would guarantee him against loss for a given period, which was not fixed, but which evidently was to be subsequently fixed between the parties. Acting upon this, the plaintiff alleges that he had remitted about $3,000 to the defendant or to the Monetary Trust, of which the defendant was the president. But to make this guaranty obligatory it is quite apparent that such remittance, when made, must be continued in the speculation or investment until a result is realized. If the plaintiff, having made the remittance, shortly afterwards withdraws it before the closing out of the investment or speculation, it is quite apparent that the condition upon which the guaranty was given had not fulfilled by the plaintiff; and any loss which resulted would not be one within the contemplation of the parties at the time that the agreement was made. It was the investment of the $3,000 and the use of that sum of money in the investment that was to produce the result hoped to be arrived at; and it was any loss under such investment, in which the sum of $3,000 to $5,000 was to be invested by the plaintiff, that the defendant agreed to guarantee. It seems that prior to May twenty-fifth there had been purchased for the plaintiff 200 shares of St. Paul railroad stock and 2,000 bushels of wheat, which the Monetary Trust was carrying for him; that early in March the plaintiff had drawn $400 of the $3,000 that had been remitted; and that on May twenty-sixth he wrote to the defendant stating that he would require the sum of $1,500 on account that week for a short time. The defendant in reply requested to know how long it would be necessary to keep that money out; to which the plaintiff on May thirtieth replied that he would require the money at least two weeks. In response to this, on June second $1,500 of the amount deposited by the plaintiff with the Monetary Trust was returned to the plaintiff by that corporation. On June thirteenth, evidently in reply to a letter inquiring about the return of the $1,500, the plain-

tiff wrote to the defendant that he would require the money for a week longer. And again on July 20, 1896, the plaintiff replied to another message from the defendant that he could not send any money for several days. On June twenty-second the plaintiff drew another $100 from the Monetary Trust, making a total withdrawal of $2,000 of the $3,000 deposited by him. No part of this money was ever returned. Several demands were made for the return of the $2,000. On September fourth the defendant wrote to the plaintiff : " We cannot take the risk of a reaction in the market without something to work on, and you must make us immediate remittance. We have waited longer than we ought to have done, as you are aware." Again on October twentieth demands were made upon the plaintiff to remit this money he had drawn out, and he having failed to do so, on October thirtieth the Monetary Trust sold the securities it was carrying for the plaintiff, which resulted in the loss of the balance of the $3,000 remaining in the hands of that corporation. There was here a direct violation by the plaintiff of the conditions upon which the guaranty depended, which was that the plaintiff remit to the Monetary Trust from $3,000 to $5,000 to be invested under the defendant's advice. It is true that such remittance of $3,000 was made and the investment was made, but shortly afterwards two-thirds of this remittance having been withdrawn upon the statement that it was to be returned in two weeks, the clearly expressed understanding that this remittance was to remain with the Monetary Trust to be used under direction of the defendant in this investment or speculation was violated. Assuming that the plaintiff might have insisted, in the absence of any definite time being fixed, that the speculation should be closed out and the money returned to him by the defendant when a reasonable time in which to conduct the speculation had elapsed, he did not do this. He obtained a portion of the money remitted upon the understanding that it was to be returned in a short time. That understanding he did not keep. There is no evidence to show that, at the time that the money was returned to him, any loss had been sustained, and to entitle him to hold the defendant upon this guaranty it is clear that he was required to leave the amount of the remittance under the control of the defendant until the speculation had been terminated. We think, therefore, upon the conceded

facts, the condition upon which the guaranty became operative was violated by the plaintiff, and that he was not entitled to recover.

The judgment and order should, therefore, be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concurred.

RUMSEY, J.:

I concur on the first ground stated in the opinion. If the contract was valid and the parties entered upon its performance by the remittance of $3,000, a subsequent withdrawal of that sum by plaintiff might furnish ground for a defense if the withdrawal was injurious to the defendant, but surely it would not avoid a contract then existing.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.